UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------ x

STEPHEN T. ROBERTS,   :

              Petitioner,   :

      -against-   :

THOMAS GRIFFIN,   :

              Respondent.   :

------------------------------------------------------ x

★ FEB 05, 2019 ★

BROOKLYN OFFICE

MEMORANDUM & ORDER

16-cv-5970 (ENV)

VITALIANO, D.J.

     Stephen Roberts has filed a *habeas corpus* petition, *pro se*, pursuant to 28 U.S.C. § 2254.

Pet. (ECF No. 1). He was convicted by a jury, in 2011, on multiple counts stemming from an

assault on a woman and the ensuing fight with her sons. His petition raises a bushelful of attacks

on his conviction. For the reasons set forth below, the writ is denied and the petition is

dismissed.[1]

---

[1] Petitioner has also filed a motion for summary judgment (ECF No. 33). Federal *habeas* proceedings generally address solely matters of law. As set forth below, prisoners face a high bar in seeking to revisit a state court's findings of fact, and neither party has raised any factual disputes here. Therefore, the motion for summary judgment is superfluous. *Cf.* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material *fact* and the movant is entitled to judgment as a matter of law." (emphasis added)). Moreover, at least one court in this circuit has held that "motions for summary judgment in [a] *habeas* proceeding are arguably inappropriate under the Rules Governing § 2254 *Habeas* Cases." *Mills v. Poole*, No. 06-cv-842A, 2008 WL 141729, at *5 (W.D.N.Y. Jan. 14, 2008); *see also Smith v. New York*, No. 13 Civ. 8423 (NSR) (JCM), 2017 WL 3917707, at *18 (S.D.N.Y. Jan. 9, 2017) (citing *id.*), *report and recommendation adopted sub nom. Smith v. Schneiderman*, No. 13 Civ. 8423 (NSR), 2017 WL 3917606 (S.D.N.Y. Sept. 5, 2017). Consequently, the Court treats this as any other *habeas* petition, governed by 28 U.S.C. § 2254 rather than Rule 56 of the Federal Rules of Civil Procedure. The motion for summary judgment, therefore, is denied as academic.

Background

I.    Trial

Roberts was tried in Queens County Supreme Court in March 2011 before Justice

William Erlbaum and a jury. Trial Tr., *People v. Roberts*, Indict. No. 218-2009 (ECF Nos. 15-4

to 15-6) ("Tr."). In their opening statement, the People presented a concise and reliable

summary of what the evidence would and did show. For that reason, the facts set forth here are

referenced primarily to the prosecutor's opening statement.

In January 2009, Monique Revander resided at 117-63 140th Street in Queens. *Id.* at

150. She lived with her son, Demetrius, and, on January 27, 2009, was also visited by

Demetrius's older brother, Gerald, and her two-year-old granddaughter, Angelique. *Id.* Given

the multiplicity of parties of the same surname, first names will be used for the ease of

understanding. Monique was acquainted with petitioner through the neighborhood, *id.* at 153,

and had allowed him to stay with her temporarily, after he told her that the building in which he

lived had been foreclosed, *id.* at 239.

On January 27, 2009, Parole Officer Vera Foster visited Monique's house to speak with

petitioner. *Id.* at 153. Demetrius urged Officer Foster to remove Roberts from his mother's

home. *Id.* at 153-54. In response, Officer Foster told petitioner to prepare to move out. *Id.* This

provoked an angry reaction from Roberts. He asked Monique whether she had told Officer

Foster that she wanted him out of the house. *Id.* at 154. When Monique said "no," Roberts

began to drink, and his anger grew. *Id.* At approximately 2:52 AM, Monique put on her jacket

and stepped outside to call 911. *Id.* She told the operator that she needed Roberts to be

removed. *Id.*

When Monique returned, petitioner confronted her, asking twice whether she had called

2

the police on him. *Id.* at 154, 246-47. She repeatedly answered in the negative, but Roberts was unsatisfied. *Id.* at 154. He said he was sorry for what he was about to do and then picked up a screwdriver and lunged at Monique. *Id.* at 154, 246-48, 257, 286-87, 293. He hit her three times in the face, striking her temple, lip, and jaw, but Monique put up her hand to defend herself. *Id.* at 155. However, petitioner would deal a laceration to Monique's left hand and a puncture wound to her right hand. *Id.* at 155. Monique screamed throughout the attack, and her sons dutifully rushed to her aid. *Id.* They wrestled with petitioner and eventually pried the screwdriver from his hand but not before Roberts slashed Demetrius on the chest. *Id.* In the course of the struggle, petitioner sustained some injuries, which he would later use to advance a theory of self-defense. *Id.* at 155, 334-40.

As her sons struggled with Roberts, Monique ran outside and called 911 again. *Id.* at 294-97. Police Officers Antoinette Sylvester and Jacqueline Greene had been dispatched to Monique's home after her first 911 call, and they arrived moments after the second call. *Id.* at 200-01. After speaking with Monique, *id.* at 201, the officers entered the home and found Roberts, *id.* at 202-03, 230. Although he told the officers that he had been injured and they called an ambulance, Roberts refused any treatment other than a bandage. *Id.* at 207, 231-32. He was thereafter arrested and transported to the precinct, where he once again claimed that he was injured. *Id.* at 234. Petitioner was then taken to the hospital in a wheelchair. *Id.* at 208. Given the ferocity of the attack, Monique and Demetrius were each treated at Jamaica Hospital. *Id.* at 256-57. Monique testified that she had a headache for one week after the attack, *id.* at 299-300, and that it took three weeks of therapy before she regained use of her right hand, *id.* at 263.

Roberts presented a different version of events. In his account, he had a minor argument with Monique after she stepped outside her home to make a phone call. *Id.* at 332-33. Monique

3

screamed, and Demetrius jumped on him, he claimed, eventually pinning him to the ground. *Id.* at 334-35. Roberts saw Demetrius wielding a screwdriver, as Monique pummeled him, and Gerald repeatedly hit him with a chair. *Id.* at 335, 348-49. Petitioner avers that he defensively wrestled the screwdriver from Demetrius and swung it around to protect himself, retreating outside after he fought off his assailants. *Id.* at 335, 345-46.

Ultimately, the jury embraced the People's explanation of the evidence. They found Roberts guilty of attempted first degree assault, second degree assault as to Monique, and third degree criminal possession of a weapon. *Id.* at 482. However, they acquitted Roberts of second degree assault as to Demetrius. *Id.*

Petitioner was sentenced as a persistent violent felony offender. Sentence, *People v. Roberts*, Indict. No. 218-2009, at 6 (Queens Cty. Sup. Ct. 2011) (ECF No. 15-6, at 132) ("Sentence"). He received concurrent terms of imprisonment: 16 years to life for attempted first degree assault, 12 years to life for second degree assault, and three-and-a-half to seven years for criminal possession of a weapon in the third degree. *Id.* at 11 (ECF No. 15-6, at 137).

II.    Post-Trial Proceedings

On July 18, 2012, Roberts moved, *pro se*, to set aside his sentence, pursuant to New York Criminal Procedure Law § 440.20 ("CPL"). State Ct. R. at 320 (ECF Nos. 15 to 15-3) ("SR"). He argued that his adjudication as a persistent violent felony offender was unlawful because the sentence on one of his predicate felony convictions was amended to correct an error after he committed the offenses in this case. *Id.* at 1-5. He also argued that his sentence was unlawful because the trial court improperly allowed the People to amend the indictment and because his presentence investigation report contained erroneous details. *Id.* at 5-9. The trial court denied the motion, *id.* at 62-65, and the Appellate Division denied leave to appeal, *id.* at 147.

On September 17, 2013, petitioner moved, again *pro se*, to vacate his convictions, pursuant to New York CPL § 440.10. SR at 152. This time, he argued that the indictment was multiplicitous and violated the prohibition on double jeopardy. *Id.* at 154-56. On a different tack, he claimed that his trial counsel was ineffective for failing to object to the submission of the weapons charge to the jury. *Id.* at 156. The trial court denied the § 440.10 motion, finding his claims to be procedurally barred and meritless. *Id.* at 170-71. The Appellate Division denied leave to appeal. *Id.* at 186.

Aside from an array of opportunities to collaterally attack a criminal conviction, New York, of course, affords aggrieved defendants an opportunity to take a direct appeal from a judgment of conviction. Represented by counsel for this purpose, Roberts appealed his convictions and sentence to the Appellate Division, Second Department. His counseled brief argued that (1) the evidence was legally insufficient to support the conviction of attempted first degree assault, (2) trial counsel was ineffective for failing to request a missing witness charge, (3) the trial court improperly amended the indictment to change the subsection under which second degree assault was charged, and (4) sentencing him as a persistent violent felony offender was improper. *Id.* at 195-235. Roberts also filed a *pro se* supplemental brief, reiterating several claims from the counseled brief, and added five additional claims: (1) that the trial court improperly permitted the People to amend the indictment to charge attempted first degree assault, (2) that his presentence report contained incorrect information, (3) that trial counsel was ineffective for inadequately cross-examining Monique Revander and failing to introduce petitioner's medical records, (4) that the prosecutor vindictively sought to have him sentenced as a persistent violent felony offender, and (5) that appellate counsel was ineffective. *Id.* at 236-63. On April 10, 2015, the Second Department reversed Roberts's second degree assault conviction

but otherwise affirmed the judgment. *Id.* at 320-21.

Pursuing his final avenue of relief on direct appeal, petitioner sought leave to appeal to the Court of Appeals. *Id.* at 322-32. However, on March 14, 2016, the high court denied leave. *Id.* at 344. Petitioner's motion for reconsideration was also denied, *id.* at 345-48, 352.

In his last attempt at relief before seeking a federal *habeas* remedy, Roberts filed a petition, *pro se*, for a writ of certiorari from the United States Supreme Court. *Id.* at 374-424. By dint of substance and the numbers, unsurprisingly, on October 3, 2016, the petition was denied. *Id.* at 425. The petition here followed on October 22, 2016. Pet.

Standard of Review

Post-conviction federal *habeas* relief is dominated by the Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), which provides that a writ of *habeas corpus* shall not issue with respect to any claim of a prisoner in state custody that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); *see also Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015) (describing this standard as "AEDPA deference"). Such deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether that court gives reasons for its determination or refers to federal law in its decision. *Harrington v. Richter*, 562 U.S. 86, 98-99, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *see also Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

"Section 2254(d) reflects the view [of Congress] that *habeas corpus* is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error

6

correction through appeal." *Harrington*, 562 U.S. at 102-03 (citation and internal quotation marks omitted). *Habeas* review under AEDPA "demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66, 132 S. Ct. 490, 181 L. Ed. 2d 468 (2011) (quoting *Felkner v. Jackson*, 562 U.S. 594, 598, 131 S. Ct. 1305, 179 L. Ed. 2d 374 (2011)). Where AEDPA deference applies, "[a] state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

*Habeas corpus* jurisprudence, given these ground rules, is well-cabined. The laser sharp focus of federal *habeas* review is reinforced by the mandated understanding that the required application of "clearly established federal law" refers to the holdings, as opposed to *dicta*, of Supreme Court decisions that are controlling law at the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court decision is "contrary to clearly established federal law," within the meaning of § 2254(d), if it contradicts relevant Supreme Court precedent or arrives at a different conclusion based on "materially indistinguishable" facts. *Id.* at 405-06. A state court decision is classified as one resting on an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Even erroneous state court decisions, then, if deemed reasonable, will survive *habeas* review. *Id.* at 411.

At the same time, the state court decision need not be "so far off the mark as to suggest judicial incompetence" before *habeas* relief may be granted. *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011) (quoting *Georgison v. Donelli*, 588 F.3d 145, 154 (2d Cir. 2009)). It remains true that "a federal court may reverse a state-court ruling where it was 'so lacking in

7

justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103). Yet, it must also be kept in mind that "[i]f this standard is difficult to meet – and it is – that is because it was meant to be." *Burt v. Titlow*, 571 U.S. 12, 20, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (citation and internal quotation marks omitted).

AEDPA superimposes another potential obstacle to federal *habeas* relief, that is, where a *habeas* claim was denied by the state court on independent state law procedural grounds. A federal petitioner can overcome such a procedural bar only by either "show[ing] cause for failing to [comply with the state procedural requirement] and prejudice therefrom" or "show[ing] that a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey v. Zant*, 499 U.S. 467, 494-95, 111 S. Ct. 1454, 113 L.Ed.2d 517 (1991).

To satisfy the first requirement, *i.e.*, to establish cause excusing the default, a petitioner must "show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *Id.* at 493 (citing *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). Such "[o]bjective factors" can include "interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel." *McCleskey*, 499 U S. at 493-94 (citation and internal quotation marks omitted). Once cause has been demonstrated, the petitioner must show "actual prejudice resulting from the errors of which he complains." *Id.* at 494 (citation and internal quotation marks omitted).

Alternatively, a petitioner can seek to meet the much higher burden of showing that upholding the state court procedural bar would result in a "fundamental miscarriage of justice," but such a showing is limited to "extraordinary instances when a constitutional violation

probably has caused the conviction of one innocent of the crime." *Id.*

Discussion

I.    <u>Legal Sufficiency</u>

Roberts argues, first, that the evidence at trial was insufficient to convict him of attempted first degree assault. Pet. at 6. He contends that the People failed "to show that [he] intended to inflict serious physical injury or ever came close to such a result." *Id.* (emphasis omitted). The state court, not addressing the contention on the merits, found that this claim was "unpreserved for appellate review," SR at 320, citing New York's contemporaneous objection rule, codified by CPL § 470.05(2).

Almost always, and certainly here, dispositively, a federal court may "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). The Second Circuit has held repeatedly that failure to comply with the contemporaneous objection rule constitutes an independent and adequate state law ground that bars federal *habeas* review. *See, e.g., Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) (citing Second Circuit cases). Therefore, petitioner's legal sufficiency claim is procedurally barred.

Of course, a *habeas* petitioner may overcome a procedural bar and obtain federal review, but only by demonstrating either (1) "cause" for the procedural default and "prejudice" from barring the claim, or (2) that failure to consider the claim will result in a "fundamental miscarriage of justice." *McCleskey*, 499 U.S. at 494-95. Here, petitioner has not even argued that there was cause for his default, so the Court need not consider the question of prejudice. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *accord Dominguez v. Rock*, No. 12-cv-3269

9

(NGG), 2016 WL 542120, at *8 (E.D.N.Y. Feb. 9, 2016) (quoting *id.*). In any event, the petition does not contain a claim of actual innocence, so the Court need not consider the question of whether a fundamental miscarriage of justice will result. In short, petitioner's claim is procedurally barred, and he has no excuse for his default. Therefore, the writ may not issue on this basis.

II.    Ineffective Assistance of Trial Counsel

Second, petitioner claims that his trial counsel was ineffective for failing to (1) request a missing witness charge with respect to Gerald Revander, (2) adequately cross-examine Monique Revander using her grand jury testimony, and (3) obtain and make use of petitioner's hospital records. The Appellate Division rejected this argument. *See* SR at 321.

a.    The *Strickland* Standard

Federal claims of ineffective assistance of counsel are governed by the two-pronged framework of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "First, the defendant must show that counsel's performance was deficient. . . . [He] must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. Courts evaluate deficiency "under prevailing professional norms," *id.* at 688, but must respect "the wide latitude counsel must have in making tactical decisions," *id.* at 689. For this reason, "[j]udicial scrutiny of counsel's performance must be highly deferential," and a court must "evaluate the conduct from the counsel's perspective at the time [of the original criminal proceeding]." *Id.*

If a *Strickland* appellant succeeds in showing that counsel's performance was deficient, the next step in the analysis requires "that the defendant affirmatively prove prejudice." *Id.* at 693. He "must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

*Strickland* is highly deferential to trial counsel, and when a federal district court reviews a state court's determination under *Strickland*, it must be doubly deferential. Given the requirements of AEDPA, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007)). In other words, the Court must ask "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. This rule sets a mark that Roberts cannot surpass.

    b.   <u>Missing Witness Charge</u>

Petitioner argues that counsel was deficient for failing to request a missing witness charge in the absence of Monique's son, Gerald, who resided in Virginia. New York mandates that, as a precondition for a missing witness instruction, "the witness must be expected to give noncumulative testimony favorable to the party against whom the charge is sought." *People v. Savinon*, 100 N.Y.2d 192, 197, 761 N.Y.S.2d 144, 791 N.E.2d 401 (2003). Here, Gerald followed Demetrius downstairs after Demetrius – who testified at trial, *see* Tr. at 162-96 – heard Monique scream. *Id.* at 150. Gerald arrived at the scene at the same time as Demetrius and remained with him while Monique ran out of the house. *Id.* There is absolutely nothing in the record to suggest that Gerald's testimony would not be cumulative of Demetrius's. Petitioner argues that Gerald "was a 'direct participant,' and as such is the only person who could have, and should have, presented non-hearsay testimony as to his role and actions in assaulting Petitioner

with a chair." Pet'r's Traverse at 5 (ECF No. 21) ("Traverse"). Quite to the contrary of petitioner's explanation-less conclusion, Demetrius was in an identical position as Gerald to give a non-hearsay account of the entire incident, including Gerald's actions.

The Court need not decide whether the judge would have granted a missing witness instruction had it been requested by Roberts's counsel. But, it is more than obvious that there is a reasonable argument that such an instruction would not issue and that a seasoned criminal defense lawyer would have reached that conclusion. Because it is not deficient performance to decline to make a futile request, *see United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."), the state court must be found to have reasonably concluded that trial counsel was not ineffective, and AEDPA does not permit that determination to be disturbed on *habeas* review.

c. Impeachment by Grand Jury Testimony

Roberts next contends that counsel was ineffective for failing to use Monique's grand jury testimony for impeachment purposes at trial. In his *pro se* supplemental brief to the Appellate Division, he argued that counsel should have confronted Monique with the fact that, in her grand jury testimony, she did not mention Gerald's presence in the apartment during the attack. SR at 245. Even assuming that petitioner accurately characterizes Monique's grand jury testimony, counsel's choice not to rely on that testimony was not ineffective assistance. Roberts does not explain what motive Monique would have had to lie about Gerald's presence. It is, frankly, hard to fathom how this inconsistency could be described as significant impeachment evidence. In any case, moreover, decisions about the manner of cross examination are "'strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (quoting *United States v. Nersesian*, 824 F.2d 1294,

1321 (2d Cir. 1987)); *accord United States v. Wilson*, 146 F. Supp. 3d 472, 482 (E.D.N.Y. 2015). Finally, even if the Court were to conclude that counsel's cross examination was deficient, petitioner has not come close to showing prejudice. Viewed against "the totality of the evidence," *Strickland*, 466 U.S. at 695, the limited impeachment that could be accomplished by use of Monique's grand jury testimony could not have exculpated Roberts. Therefore, counsel was not ineffective.

      d. Medical Records

Moving to the last arrow in this quiver, Roberts pitches the contention that counsel was ineffective because counsel failed to obtain his hospital records and admit them into evidence. He appears to believe that these records were necessary to support his theory of self-defense. Pet. at 13. Presumably, petitioner's argument is that his medical records would have revealed injuries consistent with Monique and her sons' attacking him, rather than his attacking Monique. Ironically, the argument proves, if anything, just the opposite and supports the professional understanding of the benefit of being counseled over self-representation. Overlooked by petitioner, the trial record reflects that petitioner's lawyer elicited testimony as to his injuries, his medical treatment at the scene, and his subsequent trip to the hospital by ambulance, including photographs of the injuries. Tr. at 336-45. Even assuming that petitioner's medical records would have strengthened his case – which is far from clear from the bare assertions in his briefing – the absence of those records is not "sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694, given the other evidence of petitioner's injuries that was introduced. Because petitioner has not established prejudice, counsel was not constitutionally ineffective, and the writ is denied on this ground.

III.    Persistent Violent Felony Offender Adjudication

Next in line, petitioner takes issue with the sentencing court's adjudication of him as a

persistent violent felony offender. He argues that one of his predicate felony convictions was

amended after he committed the subject crimes, which, he claims, renders the prior conviction an

impermissible basis for sentence enhancement. Plainly, this claim is based on the state court's

resolution of a question purely of state law and is not cognizable on federal *habeas* review. The

Supreme Court has squarely held that "[i]t is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62,

67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Providing even more refined guidance, the

Second Circuit has held that "[w]hether a New York court erred in applying a New York

recidivist sentencing statute is a question of New York State law." *Saracina v. Artus*, 452 F.

App'x 44, 46 (2d Cir. 2011) (summary order); *accord Pruitt v. Kirkpatrick*, No. 16 Civ. 2703

(JMF), 2017 WL 4712225, at *3 n.2 (S.D.N.Y. Oct. 18, 2017) (citing *id.*). Therefore,

petitioner's claim affords no basis for federal relief.

IV.    Amendments to the Indictment

The petition, additionally, takes exception to what it terms the unlawful amendment of

the indictment by the trial court. These claims arise from the trial court's (1) changing the

subsection under which second degree assault was charged and (2) reducing count one of the

indictment from first degree assault to attempted first degree assault.

The first claim is moot, as petitioner now admits, *see* Traverse at 6. The Second

Department reversed his second degree assault conviction, vacated his sentence on that

conviction, and dismissed the count from the indictment. SR at 321. As a result, petitioner has

received all of the relief he desired, and this claim must be denied as moot. *Cf., e.g., Delgado v.*

14

*Duncan*, No. 02-cv-4929 (JBW), 2003 WL 23185682, at *5 (E.D.N.Y. Nov. 4, 2003) (denying a *habeas* claim as moot when the petitioner "received relief on th[e] claim from the Appellate Division").

His second claim is not cognizable on federal *habeas* review. He contends that he is entitled to relief because the trial court allowed the People to amend the indictment without resubmitting it to a grand jury. However, there is no federal constitutional right to a grand jury in state criminal proceedings. *Alexander v. Louisiana*, 425 U.S. 625, 633, 92 S. Ct. 1221, 31 L. Ed. 2d 536 (1972); *Hurtado v. California*, 110 U.S. 516, 538, 4 S. Ct. 111, 28 L. Ed. 232 (1884); *LanFranco v. Murray*, 312 F.3d 112, 118 (2d Cir. 2002). For this reason, petitioner's "claim that his right to be indicted by a grand jury was violated . . . presents no federal question, and hence is unreviewable by this Court." *Parrilla v. Goord*, No. 02 Civ. 5443 (WHP), 2005 WL 1422132, at *9 (S.D.N.Y. June 20, 2005); *see also O'Halloran v. Gonyea*, No. 11-cv-0346 (GTS/TWD), 2015 WL 93716, at *20 (N.D.N.Y. Jan. 7, 2015) ("The amendment of indictments is generally a matter of state law and is not ordinarily cognizable on habeas corpus review."). Consequently, since nothing about this claim is in derogation of the ordinary rule, the amendment of the indictment without grand jury action does not warrant *habeas* relief.

V.    Presentence Report

Roberts objects that his due process rights were violated because the presentence investigation report provided to the sentencing court contained "[e]rroneous, detrimental and improper information." Pet. at 3. "[T]he sentencing process . . . must satisfy the requirements of the Due Process Clause." *Gardner v. Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977); *accord United States v. Lee*, 818 F.2d 1052, 1055 (2d Cir. 1987). As a consequence, a defendant "may not be sentenced on the basis of 'materially untrue' statements or

'misinformation.'" *United States v. Romano*, 825 F.2d 725, 728 (2d Cir. 1987) (citing *Townsend v. Burke*, 334 U.S. 736, 741, 68 S. Ct. 1252, 92 L. Ed. 1690 (1948)); *accord Constant v. Martuscello*, 119 F. Supp. 3d 87, 133 (E.D.N.Y. 2015) (citing *United States v. Alexander*, 860 F.2d 508, 511-12 (2d Cir. 1988)). Significantly, however, "[a]lthough an error in the [presentence] report may require resentencing, the error must amount to 'misinformation of a constitutional magnitude.'" *Castillo v. Donelly*, No. 06-cv-3388 (SJF), 2007 WL 1395463, at *5 (E.D.N.Y. May 7, 2007) (quoting *United States v. Tucker*, 404 U.S. 443, 447, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972)). "In other words, the error must be so egregious, that if accurately presented to the sentencing judge a different result would have been reached." *Warren v. Miller*, 78 F. Supp. 2d 120, 131 (E.D.N.Y. 2000). This demanding standard is not satisfied by the showing Roberts makes in this petition.

On balanced review, Roberts sets forth very little detail as to what misinformation his presentence report allegedly contained. His supplemental state court brief refers to the "class of charge, place of arrest, etc.," alludes to "allegations by a 'Mr. Cotoy' which have been judicially nullified," and mentions "unfair, unauthorized, unqualified allegations by a Probation Officer, which are diagnostic and conclusory." SR 243. Despite this jumble of disagreements, though, nothing in the record suggests that the trial judge was confused about the class of charge or the place of arrest. Moreover, Roberts's references to the statements of his probation officer are little more than general criticisms and do not identify anything false or misleading in the presentence report. Out of solicitude, the Court will construe the references to "Mr. Cotoy" as an argument that petitioner's sentence was based on a period of post-release supervision on an earlier offense that was later found to be unlawful, resulting in modification of the sentence. *See* SR 424.

Notwithstanding solicitude, no error is presented, much less one that would bring Roberts closer to federal *habeas* relief. The trial court made it clear at the time of sentencing that it was aware that petitioner's earlier sentence had been modified. *See* Sentence at 2-3 (ECF No. 15-6, at 128-29). Moreover, petitioner's aggregate sentence of sixteen years to life was the minimum term allowed by law for a persistent violent felony offender who committed attempted first degree assault. *See* N.Y. Penal Law § 70.08(b)(3).[2] Therefore, factually, the trial court did not rely on misinformation, and, even if it had, it would not have been able to impose a more lenient sentence had the mistake been corrected. It follows that Roberts's due process rights were not violated, and the writ may not issue on this ground.

VI.    Vindictive Sentencing

Shifting gears, petitioner contends that the prosecutor vindictively sought to have him sentenced as a persistent felony offender in retaliation for his rejection of a plea bargain. To grant relief on this ground would be to undermine the plea-bargaining process that dominates the contemporary American criminal justice system, as well as the prosecutor's lead role in it. *Cf. Lafler v. Cooper*, 566 U.S. 156, 170, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) ("[C]riminal justice today is for the most part a system of pleas . . . ."). The Supreme Court has recognized

---

[2] Out of even greater solicitude, the Court will briefly assume without deciding that petitioner's due process claim would allow this Court to review, as a matter of federal law, his argument that he was improperly adjudged a persistent violent felony offender and that the claim was fully exhausted in state court. However, the claim is meritless. The New York Court of Appeals has held that when a defendant is resentenced to rectify the erroneous imposition of post-release supervision, the operative date of the sentence, for purposes of New York's sentence enhancement statutes, is the date on which the original sentence was imposed. *People v. Boyer*, 22 N.Y.3d 15, 19, 977 N.Y.S.2d 731, 999 N.E.2d 1167 (2013). Therefore, even if the judge had been misinformed about the earlier sentence and even if this Court could reevaluate petitioner's status as a persistent violent felony offender, correcting the information before the trial judge could not have affected the sentence imposed. It follows that due process was not violated. *See Warren*, 78 F. Supp. 2d at 131.

that due process prohibits vindictive prosecution, holding that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978) (citations and internal quotation marks omitted).

Yet, in the very same case, the Court held that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id.* Although a "plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial," the Court has nonetheless "accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *Id.* at 364. Although petitioner's sentence after trial was more severe than what he was offered in plea negotiations, it does not follow that the People prosecuted him vindictively or disturbed his constitutional rights. That Roberts received after trial a sentence heavier than the one promised had he pled will not justify *habeas* relief here.

## VII.     Ineffective Assistance of Appellate Counsel

Almost boilerplate in post-conviction proceedings, Roberts claims that his attorney on direct appeal was ineffective, in this instance, for failing to assert several claims raised in his *pro se* supplemental brief to the Appellate Division and repeated here in grounds five through nine. But, the claimed ineffectiveness is unexhausted because, in derogation of the ordinary rule, it was never raised in state court via a *coram nobis* petition or other motion. "Before a federal

18

court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").

Specifically, having failed to otherwise advance it, before seeking federal *habeas* relief, Roberts was required to raise his claim of ineffective assistance of appellate counsel before the Appellate Division in a *coram nobis* proceeding because "[i]n New York, *coram nobis* is the appropriate remedy for ineffective assistance of appellate counsel." *Smith v. Duncan*, 411 F.3d 340, 347 n.6 (2d Cir. 2005) (citing *People v. Bachert*, 69 N.Y.2d 593, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987)); *accord Bryant v. Graham*, No. 11-cv-6006 (BMC), 2011 WL 6329841, at *1 (E.D.N.Y. Dec. 15, 2011); *Gil v. Kelly*, No. 90-cv-0603 (CPS), 1992 WL 151901, at *3 (E.D.N.Y. June 16, 1992) (holding that when a "[p]etitioner has never availed himself of a state *coram nobis* proceeding . . . the state courts have not had a fair opportunity to pass on this claim" (citing *Dean v. Smith*, 753 F.2d 239 (2d Cir. 1985))). Having failed to pursue a *coram nobis* proceeding, petitioner is not entitled to federal review of the claim.

Merits consideration of the unexhausted claim would not reach a different result. To begin, the *Strickland* standard, recited above, governs ineffectiveness claims as to both trial and appellate counsel. *See Hemstreet v. Greiner*, 491 F.3d 84, 89 (2d Cir. 2007). Roberts complains that, because his appellate counsel submitted a brief he considers too short, counsel did not raise the issues presented in petitioner's *pro se* supplemental brief. However, *Strickland* does not stand for the proposition that "appellate counsel must raise every nonfrivolous issue requested by the client." *Jones v. Barnes*, 463 U.S. 745, 750, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983).

Rather, counsel may, "as a matter of professional judgment, decide[] not to press those points." *Id.* at 751. Indeed, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52. As a result, to prevail on an ineffective assistance of appellate counsel claim, petitioner must show that his lawyer "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

In fact, the one claim that succeeded before the Appellate Division was a claim that appellate counsel chose to present: that the second degree assault count was improperly amended. *See* SR at 321. Moreover, the remaining arguments advanced by appellate counsel have been expressly adopted in petitioner's *habeas* petition. Courts have denied *habeas* relief when petitioners "reiterate[] many of the same arguments made by appellate counsel on appeal." *Kollar v. Smith*, No. 04 Civ. 10175 (NRB), 2005 WL 1653883, at *10 (S.D.N.Y. July 12, 2005). Finally, the other arguments that petitioner faults his appellate lawyer for failing to raise are uniformly meritless. "Appellate counsel cannot be deemed ineffective for failing to raise a meritless argument." *Miller v. Smith*, No. 05-cv-5976 (ENV), 2010 WL 4961666, at *12 (E.D.N.Y. Dec. 1, 2010) (citing *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999), *abrogated in part on other grounds, Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 403 n.8, 123 S. Ct. 1057, 154 L. Ed. 2d 991 (2003)). Because petitioner's claim is unexhausted and meritless, relief on grounds of ineffective assistance of appellate counsel is denied.

VIII.    Double Jeopardy

Petitioner contends that the indictment was multiplicitous, violating his rights under the

Double Jeopardy Clause. His argument rests on the fact that he was accused, in several counts of the indictment, of possessing a weapon. The state court found this claim to be procedurally defaulted because "it is an on the record claim which must be raised on direct appeal" and was not so raised. SR at 171. As a result, the court found, the claim was barred, pursuant to New York Criminal Procedure Law § 440.10(2)(b).

The Second Circuit has recognized CPL § 440.10(2)(b) to be an independent and adequate state law ground for decision and, therefore, as a bar to federal review. *Holland v. Irvin*, 45 F. App'x 17, 20-21 (2d Cir. 2002) (summary order); *accord Gilford v. Racette*, No. 13 Civ. 5881 (ALC) (AJP), 2015 WL 4639975, at *19 n.26 (S.D.N.Y. Aug. 5, 2015) (collecting cases), *report and recommendation adopted*, 2015 WL 7430825 (S.D.N.Y. Nov. 20, 2015); *Scott v. Connolly*, No. 11-cv-953 (PKC) (LB), 2014 WL 354253, at *7 (E.D.N.Y. Jan. 30, 2014). Plus, once again, petitioner has not attempted to show cause or to assert actual innocence, so the procedural default bars review.

That said, the state court opinion referred only to the claim that criminal possession of a weapon in the third degree was a lesser included offense of assault in the second degree, but petitioner also argues that the former was a lesser included offense of attempted assault in the first degree. Therefore, but merely for the sake of argument, the Court will consider this claim on the merits. Any review, of course, must begin with the Constitution's prohibition on double jeopardy, which "protects persons from being punished twice for a single criminal offense." *Aparicio v. Artuz*, 269 F.3d 78, 96 (2d Cir. 2001) (citing U.S. Const. amend. V; *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)). When a person violates multiple criminal statutes, double jeopardy is implicated if the two statutes punish the same offense or one offense is a lesser included offense of the other. *Rutledge v. United States*, 517 U.S. 292, 297,

116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996). To evaluate double jeopardy claims, courts apply the *Blockburger* test, according to which the prohibition on double jeopardy is not violated if "each provision requires proof of a fact which the other does not." *Id.* (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)).

Upon review, it is evident that the prohibition was not violated because the indictment passes the *Blockburger* test. Attempted first degree assault requires proof of petitioner's intent to cause serious physical injury, a requirement absent from the other two offenses. *See* N.Y. Penal Law §§ 110, 120.10(1). Second degree assault requires proof of actual physical injury to the victim, also not necessary to prove the other offenses. *See* N.Y. Penal Law § 120.05(2). Finally, third degree criminal possession of a weapon requires proof that a defendant has previously been convicted of a crime, an element absent from the assault charges. *See* N.Y. Penal Law § 265.02(1). Consequently, even assuming that petitioner's double jeopardy claim was not procedurally defaulted, the claim is meritless and does not warrant relief.

Conclusion

For the foregoing reasons, a writ of *habeas corpus* is denied, and the petition is dismissed.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2).

The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum and Order to petitioner, to enter judgment accordingly, and to close this case.

So Ordered.

Dated: Brooklyn, New York
January 28, 2019

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO
United States District Judge